1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

HERB REED ENTERPRISES, INC., et al.,

             Plaintiffs,

v.

JEAN BENNETT, et al.,

             Defendants.

2:10-CV-1981 JCM (RJJ)

**ORDER**

Presently before the court is nonparty Larry Marshak's ("Marshak") emergency motion to set aside an order and default.  (Doc. # 90).  Plaintiffs filed a response (doc. # 92), and Marshak filed a reply (doc. # 98).

Also before the court is plaintiff's' countermotion for sanctions.  (Doc. # 93).[1]  Marshak filed a response (doc. # 97), and plaintiff filed a reply (doc. # 99).

The parties stipulated to an extension of time to file various responses and replies to the underlying "emergency" motion.  (*See* doc. # 95).[2]  The court waited for the briefing process to play

---

[1] The countermotion for sanctions is actually imbedded within plaintiffs' response to the emergency motion to set aside the default.  Document numbers 92 (the response to the emergency motion to set aside the default judgment) and 93 (the countermotion for sanctions) are identical documents.

[2] The "emergency" motion is an emergency only in the sense that all motions are important to the party that filed the motion.  It is hard to imagine how the instant motion could be an "emergency" because: (1) the various parties interested in "The Platters" mark have been litigating

James C. Mahan
U.S. District Judge

1   out, and the motions are now ripe for the court's review.

2   **I.   Background**

3          The long and sordid history between all the parties with an asserted interest in "The Platters"

4   mark need not be discussed by the court.  Since The Platters broke up in the 1960s, the former band

5   members and other parties with an interest in the mark have "spent more time in judicial venues than

6   in musical ones." *Herb Reed Enters., LLC v. Florida Entm't Mgmt, Inc.*, No. 2:12-cv-00560-MMD-

7   GWF, 2012 WL 3020037, at *2 (D. Nev. July 24, 2012)[3] (quoting *Marshak v. Reed*, No. 96 CV

8   2292, 2001 WL 92225, at *3 n.2 (E.D.N.Y. Feb. 1, 2001).  The observation about the litigiousness

9   of these parties was made by a judge in 2001.  Nothing has changed.  Parties with an asserted interest

10  in "The Platters" mark are currently engaged in lawsuits with at least three judges in this district, the

11  Ninth Circuit, the Eastern District of New York, and the Second Circuit.

12         The court will address only the procedural history as is necessary to resolve the instant

13  motion.  The procedural history of the instant lawsuit, the procedural history of a related lawsuit in

14  the Eastern District of New York, and the procedural history of related lawsuits in this district are

15  all relevant.

16         *A.    Procedural History of This Case (the "2011 Nevada" action)*

17         Plaintiffs filed this action against defendants on November 12, 2010, seeking a preliminary

18  injunction, declaratory relief, a permanent injunction, and damages.  (Docs. ## 1-2).  Nonparty

19  Marshak was not a defendant or otherwise a party to the suit.  Defendants filed an answer to the

20  complaint and a response to the preliminary injunction.  (*See* docs. # 8-10, 12-13).  This court

21  granted the preliminary injunction on January 21, 2011.  (Doc. # 19).

22  _____

23  its rights for decades in federal and state courts in California, Florida, New York, and Nevada at both
24  the trial and appellate level; (2) the parties have been dealing with the adjudication of rights in the
     mark and the subsequent ramifications for decades; (3) when Marshak filed this "emergency" motion
25  he had known of the default judgment he seeks to set aside for at least one year and four months
     before filing the "emergency" motion; and (4) the parties' stipulation for time extensions to file their
26  responses and replies erodes the exigencies inherent in proper emergency motions.

27         [3] Judge Du's preliminary injunction order addresses the facts and history among the
28  numerous parties both meticulously and concisely.

**James C. Mahan**
**U.S. District Judge**                                    - 2 -

Defendant corporations Five Platters, Inc ("FPI") and Personality Productions, Inc. ("PPI") did not hire counsel to represent them. This court ordered FPI and PPI to retain counsel. (Doc. # 31). At a hearing, defendant Jean Bennett ("Bennett"), the companies' owner, advised the court that FPI and PPI would not retain counsel to represent them. (Doc. # 41).

On April 1, 2011, plaintiffs filed a motion for entry of default with the clerk of the court based on the failure of FPI and PPI to retain counsel. (Doc. # 43). Default was entered on April 4, 2011. (Doc. # 44). On April 15, 2011, plaintiffs moved for partial summary judgment against Bennett. (Doc. # 46). On April 22, 2011, plaintiffs moved for default judgment against PPI and FPI. (Doc. # 51). This court issued an order and granted default judgment against PPI and FPI. (Docs. ## 54 & 60). The court issued its default judgment and permanent injunction order on May 16, 2011. (*See id.*).

The court further granted plaintiffs' partial summary judgment motion against Bennett and issued a permanent injunction. (Doc. # 65). Plaintiffs dismissed the final claim against Bennett on September 19, 2011, which was granted on September 23, 2011. (Docs. ## 68-69). Final judgment was entered on October 4, 2011. (Doc. # 76). No appeals were taken.

B.    *Procedural History in New York*

In 2001-2002, Marshak had some success in securing rights in "The Platters" mark in a federal district court in New York. *See Marshak v. Reed*, No. 96 CV 2292, 2001 WL 92225 (E.D.N.Y. Feb. 1, 2011); *Marshak v. Reed*, 229 F.Supp.2d 179 (E.D.N.Y. 2002). On or about June 1, 2011, a mere two weeks after this court's default judgment order, Marshak filed a motion in the New York federal district court where he had previously experienced success. Marshak moved the New York court for an order holding plaintiff in civil contempt for violating an injunction entered by that court 2001.

Additionally, Marshak sought a temporary restraining order in the New York court seeking to prevent any further action in this, the Nevada, court. At a hearing on June 1, 2011, the New York federal district judge stated "I don't understand why [if] Marshak claims he's injured [he] isn't seeking intervention under Rule 24." (Doc. # 92, Ex. 3, Transcript of Civil Cause for Order to Show

**James C. Mahan**
**U.S. District Judge**

- 3 -

1    Cause Before the Honorable Nina Gershon).  Judge Gershon was referring to a Rule 24 intervention

2    in this, the Nevada, action.  When denying the temporary restraining order at the hearing, the judge

3    also said:

4        "There is a summary judgment pending in [the Nevada] case, the Court hasn't ruled on that.
        There are damages in that case, so there's a lot of issues that are still outstanding.  And it

5        seems to me that if the parties here wish to stop that case for whatever reason they should go
        to Judge Mahan in Nevada and ask him to stay the case rather than try to get the Court here

6        to order the judge to stop the case."

7    *Id.*  This hearing occurred approximately 16 days *after* this court entered its default judgment order,[4]

8    and a full four months and four days *before* this case closed.  Further, the hearing in New York,

9    whereby Judge Gershon thought it would be appropriate to intervene in this case under Federal Rule

10    of Civil Procedure 24, occurred almost one year and four months before Marshak filed the instant

11    "emergency" motion.

12        In March 2012, the New York court denied Marshak's motion for contempt.  Marshak did

13    not appeal that decision.

14       C.      *Procedural History of Subsequent Nevada Actions*

15        Plaintiff subsequently filed two separate actions over the disputed "The Platters" mark in this

16    district.  The first action is against the defendants in this lawsuit as well as Monroe Powell.  *See*

17    *Herb Reed Enters., Inc. et al. v. Monroe Powell's Platter's LLC et al.*, 2:11-cv-02010-PMP-RJJ (D.

18    Nev.).   The second action is against Marshak and one of his companies, Florida Entertainment

19    Management, Inc., ("EnMan").  *See Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, case no. 2:12-cv-

20    00560-MMD-GWF (D. Nev.).

21        Both judges in those case acknowledged the default judgment in this case when determining

22    parties' rights in "The Platters" mark.  Neither judge relied exclusively on this court's default

23    judgment when reaching their decisions.  Marshak has appealed the decision in Judge Du's case to

24    the Ninth Circuit, and he also appears to have an appeal pending with the Second Circuit.

25    _____

26         [4] Marshak knew about this court's default judgment close in time to the issuance of the order.
    Within sixteen days of this order, Marshak had already filed motion paperwork with the New York

27    court and appeared at a hearing in the New York court making arguments about the happenings in

28    this court.

**James C. Mahan**
**U.S. District Judge**

1    **II.      Discussion**

2          Marshak moves to set aside the default judgment under any one of four theories: (1) Marshak

3    was a necessary party and must be joined in this action pursuant to Fed. R. Civ. P. 19(a); (2) the

4    default judgment was obtained by fraud upon the court; (3) this court has a strong history of setting

5    aside default judgments; and (4) intervention under Fed. R. Civ. P. 24(a)(2).

6          The court will address each offered justification for setting aside the default judgment in turn.

7    The court will then turn to the countermotion for sanctions.

8          *A.      Intervention*

9          Marshak dedicates the bulk of his motion to the attempted intervention argument under Rule

10   24(a)(2).  Marshak argues he can establish the requirements to intervene in this case, even though

11   it has already been closed for about one year.  The court will address this argument first.

12         "Federal Rule of Civil Procedure 24(a)(2) requires a court, upon a timely motion, to permit

13   intervention of right by anyone who 'claims an interest relating to the property or transaction that is

14   the subject of the action, and is so situated that disposing of the action may as a practical matter

15   impair or impeded the movant's ability to protect its interest, unless existing parties adequately

16   represent that interest." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011)

17   (quoting Fed. R. Civ. P. 24(a)(2)).

18         When determining whether to permit a party to intervene under Rule 24(a)(2), the court must

19   apply a four-part test: (1) the motion must be timely; (2) the applicant must claim a significantly

20   protectable interest relating to the property or transaction which is the subject of the action; (3) the

21   applicant must be so situated that the disposition of the action may as a practical matter impair or

22   impede its ability to protect that interest; and (4) the applicant's interest must be inadequately

23   represented by the parties to the action." *Id.* (internal citations and quotations omitted).

24         It is a four-part conjunctive test, so the "failure to satisfy any one of the requirements is fatal

25   to the application." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

26   "Timeliness is the threshold requirement for an intervention as of right." *League of Latin Am.*

27   *Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (internal citations and quotations omitted).

28

**James C. Mahan**
**U.S. District Judge**                                              - 5 -

1   If "the motion to intervene [is] not timely, [the court] need not reach any of the remaining elements

2   of Rule 24." *Id.*

3         The Ninth Circuit has established three additional requirements for a district court to consider

4   when weighing the timeliness of the motion and they are: "(1) the stage of the proceeding at which

5   an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason and length of

6   the delay." *Orange Cnty. v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986). "[P]ostjudgment

7   intervention is generally disfavored because it creates delay and prejudice to existing parties."

8   *Calvert v. Huckins*, 109 F.3d 636, 638 (9th Cir. 1997) (internal citations and quotations omitted).

9   "A person seeking to intervene must act as soon as he knows or has reason to know that his interests

10   might be adversely affected by the outcome of the litigation." *United States v. Oregon*, 913 F.2d

11   576, 589 (9th Cir. 1990).

12         The evidence suggests that Marshak knew of the default judgment in this case within days

13   of the order.  Marshak cannot overcome the timeliness requirement to intervene in this lawsuit.

14   Marshak knew of this action and the default judgment in this action as early as May 20, 2011,

15   approximately a year and four months before attempting to intervene.  (Doc. # 92, Ex. 1).  At the

16   hearing for the temporary restraining order in the New York federal court in June 2011, Judge

17   Gershon basically told Marshak that if he thought his rights were being affected by this lawsuit then

18   he should come to Nevada and intervene.

19         This case did not close until October 2011.  Marshak had four months after the denial of his

20   motion in New York to come here and intervene.  He elected not to.  After default judgment was

21   entered in this case, Marshak made a strategic decision to go to New York, where he had experienced

22   success in the past, and attempt to get the New York court to enjoin this court.  The New York court

23   refused to do so.

24         Marshak could have come here immediately and intervened, but elected to wait a year and

25   four months before filing this motion.  Marshak has provided no reason as to why he waited so long

26   to attempt to intervene in this case.  The court will not permit Marshak to intervene because the

27   motion is not timely, the case has already closed, and Marshak has argued in other cases in this

28

James C. Mahan
U.S. District Judge

- 6 -

1   district that the default judgment did not affect any rights he possesses in "The Platters" mark.

2       B.      Rule 19(a)

3       Marshak argues that he was a necessary party to this case under Rule 19(a).  He then argues

4   that since the court did not join Marshak originally under Rule 19(a) that the case must be dismissed

5   under Rule 12(b)(7).  Because Marshak's attempt to join the lawsuit under Rule 19(a) fails, his

6   attempt to dismiss the action Rule 12(b)(7) must necessarily fail.

7   Federal Rule of Civil Procedure 12(b)(7) allows a court to dismiss a claim or action if the plaintiff

8   "fail[s] to join a party under Rule 19."  As an initial matter, the Rule 12(b) defenses are defenses for

9   parties in the action.[5]  The defenses are not operable for nonparties attempting to intervene into a

10  case after the case has already been closed (and when the attempting intervenor knew of the case

11  well before its closing and elected not to intervene).  *See* Fed. R. Civ. P. 12(b) ("a party may assert

12  the following defenses by motion").

13      Federal Rule of Civil Procedure 19(a) requires joinder of certain parties to an action if they

14  are necessary.  However, Rule 19(a) is not an appropriate avenue for a nonparty to attempt to join

15  an action because the nonparty believes that they are a necessary party to the action; nonparties join

16  actions under Rule 24.  *See Arrow v. Gambler's Supply*, 55 F.3d 407, 409 (8th Cir. 1995) ("[O]nly

17  a party may make a Rule 19 motion. . . .");  *Thompson v. Boggs*, 33 F.3d 847, 858 n.10 (7th Cir.

18  1994) ("We add that the plaintiff has failed to direct us to any case, nor have we been able to locate

19  any case, in which a court granted a motion to join made by a non-party to the lawsuit.  It would

20  seem that the proper course of action would be a motion to intervene under Fed. R. Civ. P. 24.").

21      Federal courts generally construe improper nonparty Rule 19 motions as a motion to

22  intervene under Rule 24.  *See Thompson*, 33 F.3d at 858 n.10; *Estate of McFarlin ex rel. Laass v.*

23  *City of Storm Lake*, 277 F.R.D. 384, 388 (N.D. Iowa 2011) ("Where an interested person has

24  improperly filed a Rule 19 motion, the court must treat it as a motion to intervene pursuant to Rule

25  24 of the Federal Rules of Civil Procedure.").  This court has already considered Marshak's Rule 24

26

27      [5] The court, of course, may dismiss for lack of subject matter jurisdiction *sua sponte*. *See*

28  Fed. R. Civ. P. 12(h)(3).

James C. Mahan
U.S. District Judge

1    motion and denied for the reasons discussed in section II.A *supra*.

2        C.      *Fraud on the Court*

3        Marshak moves the court to set aside its default judgment based upon fraud on the court

4    pursuant to Rule 60(d)(3).  Marshak argues that plaintiffs knew about Marshak's claims to rights in

5    "The Platter" mark, including potentially successor in interest rights from FPI.  Marshak argues that

6    plaintiffs filed the instant lawsuit knowing that FPI and PPI were defunct and would not defend their

7    rights, if any, in "The Platters" mark.  According to Marshak, plaintiffs then secured a default

8    judgment against defunct corporations to secure their rights in "The Platters" mark.  In support of

9    this argument, Marshak does not cite a single legal standard for setting aside a default judgment

10   under Rule 60(d)(3) or analogize the instant facts to any comparable case.

11       Under Rule 60(d)(3), a court has the authority to "set aside a judgment for fraud on the

12   court." Fed. R. Civ. P. 60(d)(3).  "The phrase 'fraud on the court' is read narrowly to mean 'only

13   that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by

14   officers of the court so that the judicial machinery can not perform in the usual manner its impartial

15   task of adjudging cases that are presented for adjudication.'"  *Chang v. Rockridge Manor*

16   *Condominium*, No. C-07-4005, 2010 WL 3063185, *4 (N.D. Cal. Aug. 3, 2010) (quoting *Appling*

17   *v. State Farm Mut. Auto Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003).  "The fraud, however, must be

18   established by clear and convincing evidence." *Id.* (citing *England v. Doyle*, 281 F.2d 304, 309-310

19   (9th Cir. 1960) (stating that a motion to set aside based on a fraud on the court is addressed to the

20   sound discretion of the trial court and the burden is on the moving party to establish fraud by clear

21   and convincing evidence).

22       Marshak has failed to establish that there was a fraud on the court, even under a much lower

23   standard than clear and convincing.  In a cancellation action before the Trademark Trial and Appeal

24   Board ("TTAB"), FPI represented repeatedly to that judicial body that it was not in fact "defunct."

25   The TTAB proceeding occurred shortly before and around the time of the initiation of the instant

26   lawsuit.  In the TTAB proceeding, FPI was represented by counsel and represented that it was not

27   out of business and it would remedy the technicality at any time required by the TTAB body.  When

28

**James C. Mahan**
**U.S. District Judge**

1   plaintiffs filed their lawsuit in the instant suit, they had good reason to believe that FPI would show

2   up and litigate the claims against it considering FPI had recently been defending itself against

3   plaintiffs in the TTAB proceeding.[6]

4          Finally, Marshak was recently involved in a Nevada state court case in the Eighth Judicial

5   District Court in Nevada involving the contested mark.  *See GEM Group, Inc. v. Jean Bennett and*

6   *Five Platters Inc. et al*, case no. 06A522975.  That state case was pending when this case was filed

7   in 2010.  In the state court case, FPI was represented by counsel.  In that case Marshak did not argue

8   that FPI was defunct and he actually attempted to serve opposition papers to FPI at the same address

9   that plaintiff attempted to serve FPI in this case.  (Doc. # 99, at 6).  The court is unconvinced it was

10  defrauded into its judgment.

11         *D.  History of Setting Aside Default Judgments*

12         Marshak argues that this court has long history of setting aside its default judgments, even

13  if the judgments are over one year old.  Marshak argues that this court has regularly set aside its

14  default judgments after learning that the defendant was not properly served.  Marshak argues this

15  court should set aside the default under Rule 60(b)(4).

16         It is true enough that "failure to properly serve a defendant with process pursuant to Fed. R.

17  Civ. P. 4 constitutes good cause to set aside an entry of default"  *Koninklijke Phillips Elecs. N.V. v.*

18  *KXD Tech., Inc.*, 245 F.R.D. 470, 472-73 (D. Nev. 2007).  However, Marshak was never a defendant

19  in this case.  Marshak cannot bootstrap his claim that the judgment is void because he thinks he

20  should have been a defendant in this case.  Marshak's opportunity to become a defendant, or any

21  party in this case, has long come and gone.  *See* section II.A *supra*.  The court finds no reason to set

22  aside its judgment because it is void under Rule 60(b)(4).

23  . . .

24

25         [6] Additionally, in the subsequent action between nonparty Marshak and plaintiffs in front of

26  Judge Du, Judge Du stated "[w]hether the parties had compelling reasons for their action or inaction
    with respect to the 2011 Nevada lawsuit is of no import.  The Court construes the 2011 Nevada

27  decision as a final judgment on the merits on only the issues litigated therein – namely, [plaintiff's]

28  rights to 'The Platters' mark vis–a–vis FPI."  *Herb Reed Enters.*, LLC, 2012 WL 3020037, at *8 n.9.

James C. Mahan
U.S. District Judge

E.      Sanctions

Plaintiffs move for sanctions pursuant to 28 U.S.C. § 1927.  "A court can award § 1927 sanctions only upon a finding of bad faith, which is present when an attorney acts with knowing recklessness or argues a meritorious claim for the purpose of harassing the opposition." *Preiss v. S&R Prod. Co.*, No. 2:10-cv-01795-RLH-RJJ, 2011 WL 4402952, at *2 (D. Nev. Sep. 20, 2011) (quoting *Mirch v. Frank*, 266 Fed.Appx. 586, 588 (9th Cir. 2008).  "Thus, a district court appropriately awards fees under § 1927 when the opposing attorney multiplies the proceedings by knowingly making frivolous arguments." *Id.* (citing *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002).  The court finds that Marshak's "emergency" motion is not in bad faith. Neither are Marshak's arguments frivolous; they are just not legally correct.  Sanctions are not warranted.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that nonparty Larry Marshak's emergency motion to set aside order and judgment (doc. # 90) be, and the same hereby, is DENIED.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that plaintiffs' countermotion for sanctions (doc. # 93) be, and the same hereby, is DENIED.

DATED November 29, 2012.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge